PROB 12B
(12/98)
RE:    MOSELY, Brian R.
       1:01CR00033

FILED
JAMES BONINI
CLERK

## United States District Court

06 JAN 18 PM 4:24

for

### District of Southern Ohio

### Request for Modifying the Conditions or Term of Supervision
### with Consent of the Offender
*(Probation Form 49, Waiver of Hearing is Attached)*

Name of Offender: **Bryan Raymond Mosely**                    Case Number: **1:01CR00033**

Name of Sentencing Judicial Officer:    **The Honorable Sandra S. Beckwith**
                                        **Chief United States District Judge**

Date of Original Sentence: **September 19, 2001**

Original Offense: **Bank Fraud, in violation of 18 U.S.C. § 1344.**

Original Sentence: **12 months imprisonment, 60 months supervised release**

Type of Supervision: **Term Of Supervised Release**    Date Supervision Commenced: **May 24, 2002**

### PETITIONING THE COURT

[ ]    To extend the term of supervision for years, for a total term of years.
[X]    To modify the conditions of supervision as follows: **The supervised releasee shall reside in a halfway house facility in the work release component for a period of 90 days. While in the program, the supervised releasee must abide by all of the program's rules and regulations, participate in all required programming, and be cooperative and compliant with the program's staff.**

### CAUSE

The offender was released from imprisonment on May 24, 2002 and commenced a 60-month-term of supervised release under the supervision of the U.S. Probation Office in Cincinnati. He was originally sentenced to 12 months imprisonment, after being convicted of Bank Fraud, in violation of 18 U.S.C. Section 1344.

Upon his release, the offender began residing at the home of his parents in Hillsboro, Ohio. His parents have moved to Georgia and the offender resides in the home alone. He has held several jobs over the course of supervision, typically as a carpenter or dry wall hanger. He reports he is currently employed by Cleveland Construction as a lead laborer earning $2,500 per month. He reports no assets other than a 1996 Oldsmobile. He advised this officer that his home has no furnishings except for a bed and some furniture in his bedroom. It is noted Mosely has only made payments totaling $225 toward restitution and owes a balance of $19,812.38.

PROB 12B
(12/98)
RE: MOSELY, Brian R.
1:01CR00033

2

On June 17, 2005, this officer made an unannounced home visit to the offender's residence. There was no answer at the door. While knocking, this officer noticed a package leaning against the front door from Lexus River Center in Covington, Kentucky addressed to Justus, Inc. and to the attention of the offender. Days later, this officer received information that the offender may have obtained three automobiles from Lexus River Center. On June 30, 2005, this officer, accompanied by an FBI agent, visited the Lexus River Center in Covington, Kentucky. It was learned that the offender and an individual named Amber Rife, whom he identified as his girlfriend, obtained possession of a Lexus model LX740 with a sales price of $65,712. The offender told the sales person he would wire transfer the full amount for the purchase in a few days. He provided a personal check in the amount of $70,357 as a "hold" check pending the wire transfer. A subsequent check by Lexus indicated the bank account did not have sufficient funds to cover the check and a wire transfer was never sent by the offender to pay for the vehicle.

On June 17, 2005, Christina Hunt and Nathan Hunter arrived at the Lexus dealership and chose a Lexus automobile valued at $60,796.40 and another automobile valued at $63,096.40. The salesperson allegedly spoke with the offender by telephone and he indicated he would wire transfer funds to pay for the vehicles. In the mean time, he instructed Mrs. Hunt to issue "hold" checks for the vehicles. She reportedly gave the checks to the salesperson, but advised him there were insufficient funds in the account. A subsequent check by Lexus officials confirmed there were insufficient funds to cover the check. The offender never wire transferred funds as promised. Mrs. Hunt and Mr. Hunter were given the vehicles on June 17, 2005.

After this officer's visit and the company's realization the vehicles had not been paid for, Lexus officials contacted Mrs. Hunt, Mr. Hunter, and the offender and asked them to return the vehicles. Arrangements were made and the vehicles were handed over to Lexus. Lexus filed a police report with the Covington, Kentucky Police Department but charges were not brought. The prosecutor reportedly declined prosecution because the vehicles were returned and there was minimal financial loss.

On October 5, 2005, this officer spoke with James McIntosh of Caryville, Tennessee. He indicated that on July 4, 2005, the offender, accompanied by Amber Rife, Robert Hunt, and Christine Hunt, arrived by boat at the dock behind his home. McIntosh stated his home was for sale and they asked to see the home. After a brief tour, Mosely offered to purchase the home for $730,000. The offender returned on July 5, 2005 and signed a real estate sales agreement to purchase the home for $730,000. Mosely also agreed to provide a down payment of $73,000 on or before July 8, 2005. The offender gave the names of his financial advisor and broker, along with their telephone numbers, to McIntosh so arrangements could be made for the money transfer. The offender also asked McIntosh to provide his routing and account number to his financial advisor in preparation of the wire transfer. McIntosh

PROB 12B
(12/98)

3

RE:   MOSELY, Brian R.
      1:01CR00033

contacted the financial advisor and was told the company did not have accounts to wire from and money would come from a different source. Mosely later told McIntosh that it would come from his broker. McIntosh attempted to contact the offender's broker, but he was told by a company representative that they did not have an account officer with the name provided by the offender. In addition, they stated they did not have an account in the offender's name. After numerous phone conversations between the offender and McIntosh in which the offender continued to delay payment for the house, McIntosh became frustrated and eventually called off the sale. McIntosh provided this officer with a copy of the real estate sales agreement signed by the offender.

On October 17, 2005, this officer interviewed Mr. Richard Tindell by telephone. He resides in Knoxville, Tennessee. He stated that on or about July 3, 2005, the offender attempted to purchase a motor boat from Tindell on Norris Lake in Tennessee for $118,000. The offender reportedly wrote one personal check in the amount of $18,000 and another in the amount of $100,000. He obtained a bill of sale and spent one night on the boat. Tindell called the offender's bank and learned that the offender had insufficient funds in his account to cover the checks. Tindell went to the boat and retrieved the bill of sale from the offender. The offender's girlfriend, Amber Rife, later returned the keys for the boat to Tindell.

On November 9, 2005, this officer met with the offender and his attorney, Herbert Haas, at the U.S. Probation Office. The offender was confronted about the allegations against him. Under the advice of his attorney, the offender declined to discuss details of the allegations with this officer. However, he readily admitted that he was outside the Southern District of Ohio without permission on numerous occasions. Specifically, he stated he traveled to Orlando, Florida in May 2005 and to Norris Lake, Tennessee in June 2005 and again between July 4, 2005 and July 8, 2005. He also admitted he traveled to Atlanta, Georgia on August 8, 2005 to see his parents. He stated his trip to Orlando was for a vacation with Nathan Hunter and his trips to Norris Lake were to stay on a boat with Robert Hunt and his wife. The offender indicated he had no reason as to why he did not ask permission of his probation officer to make these trips. The offender also stated he had no financial assets which he has not previously disclosed to the probation officer.

On July 21, 2005, this officer was notified by a detective from the Montgomery County, Ohio Sheriff's Office that Robert Hunt filed a complaint alleging the offender cashed one of Hunt's business checks in the amount of $20,000 and kept the money. This allegation is in the initial stages of investigation and this officer will advise the Court once additional information is obtained.

Although it appears the offender has attempted to defraud numerous individuals, little if any loss has been suffered. The individuals obtained their property back and, with the exception of the $20,000 check allegation, there are no known open

PROB 12B  
(12/98)  
4

RE:   MOSELY, Brian R.  
      1:01CR00033

investigations against the offender. No charges have been brought against the offender regarding the aforementioned allegations. The offender readily admitted he was out of the district without permission. He has agreed to submit to a modification of his supervised release requiring him to submit to a 90 day stay at a halfway house. The offender has expressed his willingness to participate in weekly mental health counseling. It is noted that the offender was allegedly attacked by Fred Rife, the husband of Amber Rife, in July 2005. Mr. Rife was charged and is facing a trial at this time. It is expected the offender will appear at the trial as the victim/witness in the case. Finally, the offender has requested that the Court allow him to wait until after January 8, 2005 to commence his halfway house term so he may visit with his parents who are coming to Cincinnati, Ohio for Christmas.

It is respectfully requested that the Court adopt the proposed modification of the offender's supervision. It is believed that a 90 day halfway house stay will serve to punish the offender and provide him needed structure and accountability. This officer will refer the offender to weekly individual mental health counseling.

Respectfully submitted,  
by Thomas Barbeau  
U. S. Probation Officer  
Date:   January 9, 2006

Approved,  
by John C. Cole, Supervising  
U.S. Probation Officer  
Date: 1-10-06

THE COURT ORDERS:

[ ]  No Action  
[ ]  The Extension of Supervision as Noted Above  
[X]  The Modification of Conditions as Noted Above  
[ ]  Other

Signature of Judicial Officer  
1/18/06  
Date

PROB 49

# UNITED STATES DISTRICT COURT
## Southern District of Ohio

### Waiver of Hearing to Modify Conditions
### of Probation/Supervised Release or Extend Term of Supervision

**RE: MOSELY, Bryan R.**
   1:01-CR-033

   I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation and Supervised Release or my period of supervision being extended. By "assistance of counsel" I understand that I have the right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel. I also understand that I have the right to request the Court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing. I also understand I have the right to contact an attorney prior to signing this waiver.

   I hereby knowingly and voluntarily waive my right to consult an attorney before signing this waiver and I knowingly and voluntarily waive my statutory right to a hearing and to assistance of counsel. I also agree to the following modification of my Conditions of Probation and Supervised Release or to the proposed extension of my term of supervision:

**The supervised releasee shall reside in a halfway house facility in the work release component for a period of 90 days. While in the program, the supervised releasee must abide by all of the program's rules and regulations, participate in all required programming, and be cooperative and compliant with the program's staff.**

Witness: _____    Signed: _____
U.S. Probation Officer                                Probationer or Supervised Releasee
Thomas A. Barbeau                                     Bryan R. Mosely

                    December 20, 2005
                         DATE